UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SJN PROPERTIES LLC, et al.,

                              Plaintiffs,

              -against-

HARLEYSVILLE INSURANCE COMPANY
d/b/a NATIONWIDE INSURANCE,

                              Defendant.

22-CV-7227 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiffs SJN Properties LLC ("SJN Properties") and Stephen J. Nicholas (together with

SJN Properties, "Plaintiffs") operate a medical practice that was damaged when a sink in a unit

above the practice was left running over the course of a weekend. Defendant Harleysville

Insurance Company ("Harleysville" or "Defendant"), who issued Plaintiffs' insurance policy,

claims that the policy limited indemnity to $25,000. Currently before the Court are the parties'

cross-motions for summary judgment, which require the Court to interpret the insurance policy.

The precise issue is whether the word "drain" encompasses a sink drain for purposes of

insurance coverage. Because the Court finds that the plain meaning of the word drain includes

sink drains, Plaintiffs' motion for summary judgment is DENIED and Defendant's motion for

summary judgment is GRANTED.

## BACKGROUND

SJN Properties is the owner of two second floor professional office condominium units

(the "Second Floor Units") located at 157–159 East 74 Street, New York, New York (the

"Building"). ECF No. 22 ("SMF") ¶ 1. In November 2021, a contractor was performing interior

renovation work in the combined third floor residential condominium units in the building (the

"Third Floor Units"), which are directly above the Second Floor Units. *Id.* ¶ 4. On Friday,

November 12, 2021, contractor personnel left a bathroom sink faucet running in the Third Floor

Units upon leaving the Building for the weekend. *Id*. ¶ 5. The bathroom sink faucet continued to

run until Sunday, November 14, 2021, when it was discovered by an employee of the

condominium who turned off the faucet and took a video of the incident at the time of its

discovery. *Id*. ¶ 6; ECF No 25-3.[1] By the time the running faucet was discovered, the sink into

which the faucet was running had overflowed. SMF ¶ 7. This caused water damage to the

Building's floors below, including the Second Floor Units and the abutting waiting room lobby

that service the Second Floor Units (together, the "Premises"). *Id*.

Defendant provides insurance coverage for Plaintiffs and issued Businessowners Policy

No. BOP00000084405H to Plaintiffs for a policy period from February 23, 2021 to February 23,

2022. ECF No. 20-2 (the "Policy"). The insuring agreement of the Policy states that Defendant

"will pay for direct physical loss of or damage to Covered Property at the premises described in

the Declarations caused by or resulting from any Covered Cause of Loss." *Id*. at 61. The

Premises are designated premises #1 in the Policy's Declarations. SMF ¶ 10; Policy at 22.

"Covered Causes of Loss" are defined as "[r]isks of direct physical loss unless the loss is: a.

[e]xcluded in Paragraph B. Exclusions in Section I; or b. [l]imited in Paragraph 4. Limitations in

Section I" (the "Paragraph B Exclusion"). Policy at 62. The Paragraph B Exclusion provides

that:

---

[1] Plaintiffs submitted a second statement of undisputed facts, which is mostly identical to the SMF, but contains an additional paragraph that describes the video of the sink. *See* ECF No. 26 ¶ 8. Defendant disputes Plaintiffs' characterization of the video and requests that the Court strike Plaintiffs' "non-conforming statement of 'undisputed' material facts" because it was not the statement that the parties stipulated to. ECF No. 28 at 2. Plaintiffs argue that the Court should accept their statement of undisputed material facts because it is properly before the Court and Defendant did not dispute the statement. ECF No. 37 ("Pls. Rep.") at 4. Because the Court need not rely on the characterization of the video for purposes of deciding the instant motions, the Court declines to address the parties' arguments regarding the non-stipulated to paragraph.

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> . . .
>
> (3) Water that backs up or overflows from a sewer, drain or sump.

*Id*. at 75–76.

The Policy also includes Water Exclusion Endorsement BP 0159 (08/08 ed.) (the "Water Exclusion Endorsement"), which changes the Policy by modifying the insurance provided under the Businessowners Coverage Form. *Id*. at 117. Specifically, the exclusion in Paragraph B of the Water Exclusion Endorsement replaces the water exclusion under Section I – Property. *Id*. The Policy thus excludes, *inter alia*, "[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment." *Id*.

Additionally, the Policy includes the Water Back-Up and Sump Overflow Endorsement BOP 7011 (01/09 ed.) (the "Overflow Endorsement"), which also changes the Policy by modifying the insurance provided under the Businessowners Coverage Form. *Id*. at 51. It provides that:

> A. We will pay for direct physical loss or damage to Covered Property, covered under Section I – Property, caused by or resulting from:
>
> > 1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain;
>
> . . .
>
> E. With respect to the coverage provided under this endorsement, the Water Exclusion in Section I – Property is replaced by the following exclusion:
>
> Water
>
> (1) Flood, surface water, waves (including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind including storm surge;

(2) Mudslide or mudflow; or

(3) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings.

(4) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1) or (3), or material carried or otherwise moved by mudslide or mudflow.

*Id*.

Regarding coverage, the Overflow Exclusion provides that:

C. The most we will pay per location for the coverage provided under this endorsement is $25,000 unless a higher Water Back-Up And Sump Overflow Limit of Insurance is shown in the Declaration as applicable to a specified premises and then such limit applies to the premises so designated.

The coverage provided by the Water Back-Up And Sump Overflow endorsement is subject to the Limits of Insurance of Section I – Property and as such will not increase the Limits of Insurance provided in this policy.

D. We will also pay for your loss of Business Income and your Extra Expense incurred due to a cause of loss described in paragraph A. above. This is not an additional amount of insurance. The Limit of Insurance for Water Back-Up and Sump Overflow Coverage also applies to Business Income and Extra Expense and payment for loss of Business Income and Extra Expense is applied against the Water Back-Up and Sump Overflow Limit of Insurance.

*Id*.

Defendant received notice of Plaintiffs' claim relating to the incident (the "Loss") on November 16, 2021. SMF ¶ 15. Defendant then advised Plaintiffs that the Policy provides limited coverage of $25,000 for damages from water overflow under the Overflow Endorsement. *Id*. ¶ 16. On April 13, 2022, Plaintiffs requested that Defendant issue the payment of $25,000 and also disputed Defendant's position that the Overflow Endorsement and/or any of the exclusions in the Water Endorsement Exclusion or Paragraph B Exclusion applied. *Id*. ¶ 17. The same day,

Defendant issued a check for $25,000 to Plaintiffs. *Id*. ¶ 18. On June 8, 2022, Defendant sent a letter to Plaintiffs reiterating Defendant's position that the Overflow Endorsement applied to the Loss. *Id*. ¶ 19.

Plaintiffs filed the instant action on August 24, 2022, alleging (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) bad faith insurance denial; (4) violation of New York Insurance Law Section 2601; and (5) violation of New York General Business Law Section 349(h). ECF No. 1 ("Compl."). On July 24, 2023, the parties requested leave to file pre-discovery summary judgment motions on stipulated facts. ECF No. 16 at 2. The parties agree that a threshold question in the instant matter is whether the Water Exclusion Endorsement and the Overflow Endorsement apply to the Loss, and thus whether the Policy provides coverage beyond the $25,000 already paid. SMF ¶ 21.

Plaintiffs request that the Court grant their motion for summary judgment on Count I of the Complaint; enter a declaratory judgment that the Loss is not excluded from coverage under the Policy; dismiss Defendant's fourth, fifth, and seventh affirmative defenses; and direct the parties to a hearing on damages. ECF. No. 27 ("Pls. Mem."). Defendant seeks an order dismissing the Complaint in its entirety. ECF No. 21 ("Def. Mem.").

## LEGAL STANDARD

The Court sets forth the legal standards governing the motions for summary judgment and interpretation of insurance policies under New York law.

### I.    Summary Judgment Standard

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The

movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. When the movant properly supports her motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). When evaluating cross-motions for summary judgment, courts review each party's motion on its own merits and draws all reasonable inferences in favor of the non-moving party. *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020); *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017).

## II.    Interpreting Insurance Policies Under New York Law

In New York,[2] insurance policies are interpreted by traditional rules of contract interpretation. *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). "[C]ourts determining a dispute over insurance coverage must first look to the language of the policy." *Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, 670 F. Supp. 3d 12, 28 (S.D.N.Y. 2023), *aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate*

---

[2] Based on the choice of law provision in the Policy, New York law controls. Policy; Pls. Mem. at 8 n.3.

*1861*, No. 23-CV-690, 2023 WL 7648381 (2d Cir. Nov. 15, 2023) (cleaned up). Unambiguous

provisions of an insurance contract must be given their plain and ordinary meaning. *Olin Corp.*,

704 F.3d at 99. "Determining whether a contract is ambiguous is an issue of law for the courts to

decide" and "provisions in a contract are not ambiguous merely because the parties interpret

them differently." *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-CV-4629 (LGS), 2023

WL 3647370, at *4 (S.D.N.Y. May 25, 2023) (internal citations omitted). "Ambiguities in

contract language must be construed in favor of the insured, but a contract is not ambiguous if

the language it uses has a definite and precise meaning, unattended by danger of misconception

in the purport of the agreement itself, and concerning which there is no reasonable basis for a

difference of opinion." *Daileader*, 670 F. Supp. 3d at 28 (cleaned up). Courts interpret the

language of insurance contracts "according to common speech and consistent with the reasonable

expectation of the average insured." *Daileader*, 670 F. Supp. 3d at 28 (internal citation omitted).

## DISCUSSION

The Court first finds that Defendant is entitled to summary judgment on Count I of the

Complaint as the Loss is covered by the Overflow Endorsement. The Court next turns to Counts

II–V (the "Bad Faith Claims"), dismissing all four.

## I.     The Provisions Conflict

"Under an all-risk policy, losses caused by any fortuitous peril not specifically excluded

under the policy will be covered." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine

Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (internal citation omitted). The insured has the burden of

establishing a *prima facie* case for recovery by showing: "(1) the existence of an all-risk policy,

(2) an insurable interest in the subject of the insurance contract, and (3) the fortuitous loss of the

covered property." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)

(internal citation omitted). In this case, there is no dispute that the Policy is an all-risk policy, that Plaintiffs have an insurable interest in the Premises, and that Plaintiffs have demonstrated a fortuitous loss.

"Once an insured has met its burden of establishing a *prima facie* case, the burden shifts to the insurer to establish that an exclusion or exception to coverage applies." *Fabrique Innovations, Inc. v. Fed. Ins. Co.*, 354 F. Supp. 3d 340, 349 (S.D.N.Y. 2019), *aff'd*, 853 F. App'x 709 (2d Cir. 2021). "It is settled that in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013) (quoting *County of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994)). As the New York Court of Appeals has explained, the law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds:

> [W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.

*Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 876–77 (N.Y. 2009) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)).

Both the Water Exclusion Endorsement and the Overflow Endorsement purport to replace language in the Paragraph B Exclusion, with each stating that the endorsement changes the policy and modifies the insurance provided under the Businessowners Coverage Form. However, it is not possible for both the Water Exclusion Endorsement and the Overflow Endorsement to

replace the same language at the same time. Plaintiffs argue that the Overflow Endorsement fully

supersedes and replaces the Paragraph B Exclusion and the Water Exclusion Endorsement. Pls.

Mem. at 15. Defendant does not affirmatively state which Endorsement it believes applies, but

analyzes the coverage (or lack thereof) as if the Overflow Endorsement controlled. Def. Mem. at

9–13; ECF No. 31 ("Def. Opp.") at 3–9; ECF No. 36 ("Def. Rep.") at 2–5. Thus, the parties

seemingly agree that the Overflow Endorsement controls.

| Paragraph B Exclusion | Water Exclusion Endorsement | Overflow Endorsement |
|---|---|---|
| (*excludes coverage from*) Water that backs up or overflows from a sewer, drain or sump | (*excludes coverage from*) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment | (*provides coverage for*) Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain |

The effect of the Overflow Endorsement, as relevant here, is to add coverage for sewer

and drain backup and to eliminate the exclusion for the same found in the Paragraph B

Exclusion. There are two main distinctions in the language between the Paragraph B Exclusion

and the Overflow Endorsement: (1) the change from "backs up . . . from" to "backs up through"

and (2) the addition of the language "otherwise discharged from."

A court within this Circuit, faced with determining coverage when language identical to

that of the Paragraph B Exclusion and Overflow Endorsement was contained in the policy at

issue, explained the resulting "policy paradox":

> [T]hough the [Overflow Endorsement]—which eliminates the [Paragraph B Exclusion]—was purportedly purchased to expand coverage under the Policy, it simultaneously limits coverage. Specifically, the [Overflow Endorsement] defines the nature of losses subject to the additional coverage as a broader category of potential losses than was originally excluded under the [Paragraph B Exclusion]. In other words, the "addendum" adds coverage that was previously excluded but also limits coverage given its broader applicability. Without the [Overflow Endorsement], for example, "waterborne material" that is "otherwise discharged from" a sewer or drain could conceivably be covered to the full extent of the

policy. However, with the [Overflow Endorsement], the same loss becomes
subject to a $25,000 limit.

*301-375 W. Onondaga St., LLC v. Liberty Mut. Fire Ins. Co.*, No. 18-CV-1044 (TWD), 2020 WL

58673, at *6 (N.D.N.Y. Jan. 6, 2020).

The court reasoned that the interplay between the clauses created an ambiguity in the

policy. *Id*. To resolve the ambiguity, the court interpreted the Water Extension – here, the

Overflow Endorsement – in the plaintiff's favor and construed it to be no broader than the

original Water Exclusion – here, the Paragraph B Exclusion. *Id*. Thus, the court found the Water

Extension to apply only to the exact same category of losses that were originally excluded in the

policy under the Water Exclusion: water that backs up or overflows from a sewer, drain, or sump,

and not any of the broader categories of loss that might have otherwise been included in the

Water Extension. *Id*.

Here, there are three competing provisions. The Water Exclusion Endorsement overlaps

with both the Paragraph B Exclusion and the Overflow Endorsement. Like the Paragraph B

Exclusion, the Water Exclusion Endorsement uses the language "backs up . . . from" rather than

"backs up through." And like the Overflow Endorsement, the Water Exclusion Endorsement

includes the language "otherwise discharged from." The Court need not resolve the ambiguity,

however, because the Court finds that the term "drain" applies to a sink drain and that the water

"overflowed," consistent with all of the Provisions. And as is explained *infra* Section II, the

Court applies the Overflow Endorsement, because the Court must construe the Policy in favor of

the insured. *See Parks Real Est.*, 472 F.3d at 42.

## II.     The Provisions Apply to the Instant Matter

The parties contest whether the word "drain," as used in the Provisions, applies to a sink

drain. Plaintiffs argue that it does not, because, according to Plaintiffs, the meaning of the term

"drain" should be construed "by the company it keeps." Pls. Mem. at 8 (quoting *242-44 E. 77th St., LLC v. Greater New York Mut. Ins. Co.*, 31 A.D.3d 100, 103–04 (1st Dept 2006)). Here, the other words in the Provisions, according to Plaintiffs, relate to "structures or equipment that carries water away from a building that is external in origin," and the definitions of "sewer," "drain," and "sump" all refer to conduits for wastewater. *Id*. at 8–9. In contrast, a "sink" is a "stationary basin connected with a drain and usually a water supply for washing and drainage." *Id*. at 9 (quoting *Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/sink). Defendant asserts that the word drain unambiguously applies to sink drains. Def. Mem. at 10–11.

The Court finds that the term "drain" applies to a sink drain such as the one at issue here. There is nothing about the common understanding of the word "drain" that would exclude a sink drain. This conclusion is buttressed by decisions of New York state courts. In *Newlo Realty Co. v. U.S.F. & G. Corp.*, the First Department held that the word drain "is unambiguous and applies to the sink drain in question." 213 A.D.2d 295, 295 (1st Dept 1995). Analyzing the particular language of the insurance contract, the court found that water damage "sustained as a result of overflow from a blocked-up bathroom sink drain" fell within the exclusion for "water that backs up from a sewer or drain" and disclaimed the argument that the doctrine of *ejusdem generis* suggested that the exclusion only applied to natural disasters. *Id*.

In *180 Lafayette Corp. v. Wesco Ins. Co.*, the New York County Supreme Court considered whether an insurance policy covered water damage caused by a toilet overflowing in an upstairs apartment. No. 150160/2019, 2021 WL 256631, at *1 (N.Y. Sup. Ct. Jan. 26, 2021). The court found that the water exclusion, which stated that the policy did not cover "damage caused directly or indirectly by water that backs up or overflows or is otherwise discharged from

a sewer, drain, sump, sump pump or related equipment," clearly and unambiguously applied to

bar coverage for the loss. *Id*. at *3 (stating that "Plaintiff's attempt to create an ambiguity where

none exists is unavailing"). In *193 Hooper St. Condo v. Wesco Ins. Co.*, the court similarly held

that the exclusion that stated "water that backs up or overflows or is otherwise discharged from a

sewer, drain, sump, sump pump or related equipment" applied to damage caused by an

overflowing toilet. No. 657266/2017, 2020 WL 228355, at *1 (N.Y. Sup. Ct. Jan. 10, 2020). A

toilet – like a sink – does not carry "water away from a building that is external in origin." Pls.

Mem. at 8.

　　　For support, Plaintiffs rely on a nonbinding case from the Northern District of New York

that held that "the term 'drain' as used in the Policy refers to a pipe that is used to divert water

that comes from an external source, *e.g.*, surface water from rainfall" and would not apply to

plumbing systems such as a shower drain or sink. *Onondaga*, 2020 WL 58673, at *7. Plaintiffs

also rely on a Third Department case in which the court found that the defendant "failed to

establish that its interpretation—that the loss is excluded from coverage so long as water backs

up through a sewer or drain, regardless of where the sewer or drain is located—is the only fair

interpretation of the two provisions." *Pichel v. Dryden Mut. Ins. Co.*, 117 A.D.3d 1267, 1269 (3d

Dept 2014). However, the policy in that case contained a conflicting coverage grant for water

that overflowed from the plumbing system. *See 180 Lafayette Corp.*, 2021 WL 256631, at *3–4

(distinguishing *Pichel* from a water exclusion more analogous to the instant matter).

　　　The Court remains unconvinced that the term "drain" as utilized in the Provisions – and

regardless of whether it is in the company of "sewer" alone or "sewer, . . . sump, sump pump

[and] related equipment" – does not apply to a sink drain. And, the Court declines to find

ambiguity in this term where none exists. Accordingly, any of the three Provisions applies to the sink drain at issue.

Plaintiffs next argue that the Loss is covered by the Policy because it only applies to water that "backs up through" and "therefore can only apply to water in reverse flow." Pls. Mem. at 12; *see also* ECF No. 33 ("Pls. Opp."). Plaintiffs ignore, however, that all three Provisions also apply to water that overflows. Although occasionally disclaiming that the water overflowed, Plaintiffs also acknowledge that "the water is flowing in the right direction, albeit not fast enough to keep the sink from overflowing." Pls. Mem. at 13. Here, the water clearly and inarguably overflowed the sink. Thus, each of the three Provisions applies to the Loss.

Finally, the Court turns to which of the Provisions applies, finding that the Overflow Endorsement controls. First, both parties apparently agree that the Overflow Endorsement controls. Second, construing the Policy in favor of the insured, *see Parks Real Est.*, 472 F.3d at 42, the Court also determines that the Overflow Endorsement controls. Were the Paragraph B Exclusion or Water Exclusion Endorsement to apply, Plaintiffs would receive nothing in coverage for the Loss. However, if the Overflow Endorsement applies, Plaintiffs will receive (and have already received) $25,000 for the Loss. Accordingly, the Court holds that the Overflow Endorsement applies and that the Loss is covered by such, therefore granting Defendant's motion for summary judgment and denying Plaintiffs' motion for summary judgment as to this claim.

## III.    Plaintiffs' Bad Faith Claims Are Dismissed

The Court next dismisses Plaintiffs' allegations sounding in bad faith: (1) Count II, breach of the implied covenant of good faith and fair dealing; (2) Count III, bad faith insurance denial; (3) Count IV, violation of New York Insurance Law Section 2601; and (4) Count V, violation of New York General Business Law Section 349(h).

### A.  Breach of the Covenant of Good Faith and Fair Dealing

Under New York law, parties to a contract "are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (internal citation omitted). There is no "separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." *Id*. at 81. Therefore, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

Here, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is duplicative of Plaintiffs' claim for breach of contract. Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing "by failing to complete its indemnity obligations on the Claim, declining coverage on the claim and only offering to pay $25,000 based on an exclusion in the Policy that has no colorable application to the subject loss as set forth above." Compl. ¶ 57. Plaintiffs argue that the good faith and fair dealing claim is somehow distinct from the breach of contract claim, *see* Pls. Opp. at 14–15, but both claims are based upon Defendant's alleged failure to indemnify Plaintiffs for the Loss, *see Ctny. of Orange v. Travelers Indem. Co.*, No. 13-CV-6790 (NSR), 2014 WL 1998240, at *3 (S.D.N.Y. May 14, 2014) (dismissing breach of the covenant of good faith and fair dealing claim as duplicative of the breach of contract claims when the "facts giving rise to the two claims are the same: that [insurer] did not perform its contractual duties as it had agreed to under the insurance policy"). As such, the claim for breach of the implied covenant of good faith and fair dealing is dismissed.

**B. Bad Faith Denial of Insurance Coverage**

"In the first-party context, 'New York Law . . . does not recognize . . . an independent cause of action for bad faith denial of insurance coverage.'" *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 344 (S.D.N.Y. 2021) (quoting *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 108 (2d Cir. 2012)); *see also Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002) ("Under New York law, an independent tort action for bad faith denial of insurance coverage is not recognized."). Plaintiffs do not dispute this, only arguing that Defendant's interpretation of the Policy is unreasonable. Pls. Opp. at 13–14; *see also Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (finding that the plaintiff waived his argument when he failed to raise it in his opposition to summary judgment). Accordingly, Plaintiffs' claim for bad faith denial of insurance coverage is dismissed.

**C. New York Insurance Law Section 2601**

Count IV, alleging violation of New York Insurance Law § 2601, is dismissed because New York Insurance Law § 2601 does not provide for a private right of action. *See* N.Y. Ins. Law § 2601; *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 126 (2d Cir. 2017). Moreover, Plaintiffs waived this argument by failing to address it in their opposition brief. *See Palmieri*, 392 F.3d at 87.

**D. New York General Business Law Section 349(h)**

New York General Business Law Section 349 generally makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," N.Y. Gen. Bus. Law § 349(a), and provides for a private right of action, *id.* § 349(h). To make out a claim, "a plaintiff must allege both a deceptive act or practice directed toward

consumers and that such act or practice resulted in actual injury to a plaintiff." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004).

Although the deceptive act or practice must be consumer-oriented, "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Not all insurance disputes are private contract disputes, however. In *Oswego*, the New York Court of Appeals determined that the acts of the defendant bank were within the ambit of GBL § 349 because the bank customer received the standard forms and advice as any customer would. *Id*. at 745. Conversely, in *New York Univ. v. Cont'l Ins. Co.*, the dispute did not fall under GBL § 349 because the parties occupied similar bargaining power, the policy was tailored to meet the purchaser's wishes, and each side received expert representation and advice. 662 N.E.2d 763, 770 (N.Y. 1995). Here, Plaintiffs allege that Defendant's actions were consumer-oriented because Defendant routinely misapplies the Provisions, the Policy is a standard form policy that is part of Defendant's usual and customary business practices, and Defendant's alleged misconduct has a broad impact on customers at large. Compl. ¶¶ 81–83. Defendant only contends that there is no "factual basis to suggest that the conduct complained of was directed at any party other than the Plaintiffs." Def. Rep. at 7.

The Court need not determine whether Defendant's alleged deceptive act or practice was consumer-oriented, however, because the Court holds that Plaintiffs have not sufficiently demonstrated a deceptive act or practice. The deceptive act or practice alleged here is that Defendant "acted in a materially misleading way" by "interpreting the Policy [in] such a bad faith manner in seeking to avoid its coverage obligations." Compl. ¶ 84; *see also id*. ¶ 81. Because this claim relies on a finding that Defendant misapplied the Provisions, and the Court

has found for Defendant regarding the interpretation of the Provisions, *see supra* Section II, the Court must dismiss the claim under GBL § 349.

## IV.    Plaintiffs' Claim for Attorneys' Fees Is Dismissed

The Court also dismisses Plaintiffs' claim for attorneys' fees. *See Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006) (quoting *New York Univ.*, 662 N.E.2d at 772) ("[A]n insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.").

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 19 and to close the case.

Dated:  June 24, 2024
        New York, New York

                                        SO ORDERED.

                                        *Jessica Clarke*
                                        _____
                                        JESSICA G. L. CLARKE
                                        United States District Judge